IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**CARRIE J. RHODES,**

    **Plaintiff,**

vs.                                                      Case No. 4:11cv153-RH/CAS

**SUPERVISOR OF ELECTIONS,
LEON COUNTY,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

    This case was initiated on April 13, 2011, by the filing of a complaint alleging employment discrimination on the basis of race.  Doc. 1.  Counsel for Plaintiff was permitted to withdraw, docs. 22, 23, and Plaintiff has been proceeding pro se in this case.  Defendant filed a motion for summary judgment, doc. 19, in November 2011, and despite the fact that Plaintiff was granted several extensions of time in which to file a response in opposition to the motion, docs. 20-21, 26-28, 30-32, no opposition has been filed.  The evidence is, accordingly, unrebutted.

**Allegations of the complaint**

    Plaintiff is a black female who worked for the Leon County Supervisor of Elections Office (hereinafter "Elections Office") from September 2007 until January 4,

2008, as an OPS (other personnel services) employee. Doc. 1, at 2-3. After she was fired, Plaintiff filed a complaint with the Florida Commission on Human Relations (hereinafter "FCHR") on February 1, 2008, alleging that her termination was due to racial discrimination. *Id.*, at 3. Thereafter, Plaintiff sought employment with Capital Regional Medical Center (hereinafter "CRMC"), but was not hired because the Elections Office advised that it would not rehire Plaintiff due to "legal reasons" and "CRMC has a policy of not hiring candidates who are not eligible for rehire with a former employer." *Id.*, at 4-6.[1] The complaint alleges claims for discrimination and retaliation. *Id.*, at 6-7.

Plaintiff attached to the complaint a copy of an Employment Charge of Discrimination filed with FCHR against both CRMC and the Elections Office. Doc. 1-2. Plaintiff alleged retaliation in a complaint filed on October 28, 2009, after CRMC refused to hire her based on the statements made by the Elections Office. *Id.* The FCHR issued a determination on May 3, 2010, "that reasonable cause exists to believe that an unlawful employment practice occurred." Doc. 1-3. On March 23, 2011, the Equal Employment Opportunity Commission (hereinafter "EEOC") issued a Notice of Right to Sue letter. Doc. 1-5.

**Standard of Review**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with

---

[1] Plaintiff alleged that the "legal reason" was the discrimination complaint Plaintiff filed with the FCHR. *Id.*, at 5.

evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The

nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."  N.D. Fla. Loc. R. 56.1(A).  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  Id.  The Local Rule provides that the party opposing the motion shall serve a similar statement of the material facts "as to which it is contended that there exists a genuine issue to be tried," using the same format.  Id.  Facts set forth in Defendant's statement will be deemed admitted if supported by the record evidence.  In this case, those facts are admitted because Plaintiff did not file her own statement.

**The relevant Rule 56(e) evidence**

Plaintiff was hired by the Defendant in November 2007 as a temporary OPS employee.  Doc. 19, Ex. B (doc. 19-2, at 2).  In the remarks section of the Personnel Action Form, it indicates Plaintiff was hired to assist with the "2008 Election cycle."  Id.

On January 3, 2008, Plaintiff was involved in a verbal altercation with several co-workers.  Doc. 19, Ex. F.  This argument was so load and disruptive, that the building manager complained to the Supervisor of Elections about the noise.  Id.  Plaintiff

refused to discuss the matter with her supervisor, and both Plaintiff and another co-worker were sent home for the day. *Id.*

Plaintiff initially left the Office peacefully, but she returned shortly thereafter, collected her personal belongings and threw her security badge on her desk. Doc. 19, Ex. F. Later that day, Plaintiff called her supervisor on the telephone and advised that she was resigning her position. *Id.* Plaintiff then called her supervisor on the following day and requested a letter setting forth the reasons Plaintiff was terminated. *Id.* The Elections Office refused to issue the letter requested by Plaintiff, but did issue a letter terminating Plaintiff's employment, effective January 4, 2008. *Id.* Simultaneously, the Elections Office completed a Personnel Action Form on January 4, 2008, and noted that Plaintiff was "not eligible for rehire." Doc. 19, Ex. B (doc. 19-2, at 1).

Plaintiff filed a complaint with FCHR the following month, on February 1, 2008, claiming racial discrimination.[2] Doc. 19, Ex. C (19-3, at 6). Plaintiff alleged that she had an argument with two other employees, both of whom were white. *Id.* Plaintiff and the white female employee were sent home for the day, and that evening, Plaintiff said her supervisor told her she had heard about the incident. Plaintiff was dismissed and told her "services were no longer needed." *Id.* Plaintiff complained that she was the only employee terminated after the incident. *Id.* On July 30, 2008, FCHR issued a Notice of Determination: No Cause. *Id.*, at 5. The Commissioner "determined that no reasonable cause exists to believe that an unlawful employment practice occurred." *Id.*, at 4. The complaint was dismissed on September 5, 2008. *Id.*, at 3. The EEOC "adopted the

---

[2] Plaintiff actually filed two separate FCHR complaints. The first complaint alleged only racial discrimination by the Elections Office. The second complaint was filed against both CRMC and the Elections Office, and alleged retaliation. Doc. 1-2.

finding of the state or local fair employment practices agency that investigated" Plaintiff's charge. *Id.*, at 1.

Subsequently, Plaintiff applied for a position at CRMC in October 2009, and was advised that although she had passed the criminal background check, a problem had been discovered. Doc. 19, Ex D (Plaintiff's affidavit). Plaintiff was asked why the Elections Office listed her as a "no rehire" and Plaintiff said she did not know because her position had been OPS. *Id.* A follow-up phone call to the Elections Office advised that Plaintiff was a "no rehire" because of a "legal issue," but the Office would not elaborate on the reasons. *Id.*, at 2. When this information was communicated to Plaintiff, she explained "that the legal issue was a discrimination complaint that" Plaintiff had filed with FCHR. *Id.* Plaintiff then requested to speak to Mr. Caracciolo, the hiring person for CRMC, who told Plaintiff that the dates she listed for her employment with the Elections Office on her employment application did not match up with the dates listed on Plaintiff's resume. *Id.* Additionally, Mr. Caracciolo told Plaintiff that she "would need to request that the Supervisor of Elections put the legal issue on letterhead." *Id.*

Plaintiff called the Elections Office and spoke with Cynthia Kelley, requesting that she call CMRC to clarify her employment dates. *Id.* Plaintiff also requested an "explanation of the legal issue" be put on Office letterhead. *Id.* Both requests were denied, although Ms. Kelley advised that CMRC could call her for Plaintiff's employment dates. *Id.* When Plaintiff attempted to meet again with Mr. Caracciolo, Plaintiff said that he "was not interested and in fact he became unprofessional and aggressive as [Plaintiff] simply tried to discuss the issues at hand." *Id.* Mr. Caracciolo told Plaintiff she "would not be hired because of the 'legal issue.' " *Id.*

Defendant has also submitted the affidavit of Cynthia Kelley who states that she never received a call from "anyone at Capital Regional Medical Center regarding" Plaintiff.  Doc. 19, Ex. E (doc. 19-5, at 1).  However, on October 19, 2009, Ms. Kelley received a call from General Information Services regarding a reference for Plaintiff.  *Id.*  Ms. Kelley advised of her dates of employment, and was then asked if Plaintiff was eligible for rehire.  *Id.*  Ms. Kelley "advised the caller she was not eligible for rehire but that [she] could not discuss [that] issue."  *Id.*  When the caller attempted to press the matter, Ms. Kelley "simply responded that [she] could not discuss it because it was a legal matter."  *Id.*  Ms. Kelley advises that at no time did she ever tell the caller that Plaintiff had filed a claim of discrimination.  *Id.*, at 2.

Janet Olin, Plaintiff's supervisor at the Elections Office, also filed an affidavit explaining the basis for Plaintiff's termination.  Doc. 19, Ex. F (doc. 19-6).  Ms. Olin states that Plaintiff's employment was terminated not because of her skin color, but because of Plaintiff's actions.  *Id.*

On January 3, 2008, Plaintiff was working with a team of four other employees. *Id.*  Mr. Rosario was one of the other four employees, and "had been given the responsibility of supervising and coordinating the work of" Plaintiff and the other employees.  *Id.*  However, on January 3rd, Ms. Conley had assigned Plaintiff "the task of pulling absentee ballots and had given Mr. Rosario a different assignment."  *Id.*  Plaintiff began "loudly challenging and berating Nelson Rosario asking why he was not pulling absentee ballots."  *Id.*  Mr. Rosario explained he was given other tasks, but Plaintiff "continued to harass Mr. Rosario asking him why he thought he was too good to pull absentee ballots."  *Id.* 1-2.  Plaintiff continued to yell at Mr. Rosario when another

staff member, Sherry Bell, "came to his aid, which unfortunately, became a heated argument." *Id.*, at 2.

Ms. Bell then reported the incident to Ms. Conley and during that discussion, the property manager came to Ms. Conley's Office to report complaints from other tenants in the building about the yelling from Plaintiff's work area. *Id.* Ms. Conley went with Ms. Bell to the work area and tried to "calmly discuss the situation and rebuild a harmonious work environment within a very small staff of five people." *Id.* Ms. Bell was willing to discuss the situation, but Plaintiff was not. *Id.* Both employees were "still upset" and so, "in the interest of fairness, Ms. Conley sent both of them home for the remainder of the day." *Id.* Ms. Bell collected her purse and left the area quietly, as did Plaintiff initially, but within a few minutes, Plaintiff returned and "collected all her personal items." *Id.* As Plaintiff exited the area, she "threw her security badge at her work station, an act seen as a demonstration of her anger, and her resigning her position." *Id.*

Ms. Conley met with Ms. Olin later that afternoon to discuss the situation. Doc. 19, Ex. F (doc. 19-6, at 2). Ms. Olin inquired as to the work attitudes of both Plaintiff and Ms. Bell, and Ms. Conley explained that Ms. Bell was a "team player, willing to shorten her lunch to meet the daily fluctuating workload while [Plaintiff] was never willing to shorten hers . . . ." *Id.* Ms. Conley reported that Plaintiff had even been late returning from lunch one "day when the work load was especially heavy with the initial absentee ballot mail out." *Id.* Following that meeting, Ms. Olin attempted to speak with Plaintiff and left a voice message for Plaintiff to call her, which she did within two hours. *Id.* Ms. Olin described Plaintiff's voice as having a "challenge in her voice" and she then

gave Plaintiff the option of voluntarily resigning or being terminated.  *Id.*  Plaintiff said she would resign.  *Id.*

The next day, Ms. Bell returned to work and "apologized for her behavior."  *Id.*  "She also expressed regret and wanted to move forward."  *Id.*  Ms. Conley and Ms. Olin discussed the matter and decided that Ms. Bell could continue her employment with the Elections Office.  *Id.*, at 3.

Plaintiff, who stated on January 3rd that she would resign, later called Ms. Olin and requested "a letter setting out the reasons [Ms. Olin] terminated her."  *Id.*  Ms. Olin sent a letter to Plaintiff dated January 4, 2008, which stated: "This letter serves to confirm that all employees of the Leon County Supervisor of Elections serve at the will of the Supervisor of Elections."  Doc. 19, Ex. B (doc. 19-2, at 3).  The letter concluded, "Your employment as an 'Other Personnel Services' employee is no longer required."  *Id.*

Ms. Olin explained in her affidavit that her decision to accept Plaintiff's "resignation and to end her employment with our office was based solely upon [Plaintiff's] actions and demeanor."  Doc. 19, Ex. F (doc. 19-6, at 3).  The Elections Office "requires individuals who can work in stressful situations and be a team player."  *Id.*  Plaintiff did not exhibit those qualities.  *Id.*  Ms. Bell's employment was continued because she "had no prior absences or infractions during her employment with our office, she apologized for her actions, and she promised not to allow herself to become embroiled in an argument again."  *Id.*

## Analysis

### a.     Racial discrimination[3]

Title VII prohibits discrimination in the workplace based on, among other things, a person's race.  42 U.S.C. § 2000e-2(a)(1).  Analysis of a Title VII disparate treatment claim supported by circumstantial evidence[4] requires use of the Supreme Court's burden-shifting framework as described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).  Plaintiff bears the initial burden of presenting a prima facie case of discrimination.  Wilson, 376 F.3d at 1087.  After that burden is met, the burden shirts to the employer-defendant to articulate a non-discriminatory basis for its employment decision.  *Id.*  Thereafter, the burden shifts back to the plaintiff to demonstrate that the non-discriminatory reason is a pretext.  *Id.*

To make out a prima facie case of racial discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated

---

[3] Although the complaint contains only Count I, it alleges both unlawful discrimination and retaliation.  Doc. 1, at 6.  Thus, there are two claims and each will be addressed separately.  Defendant failed to separately address the discrimination allegation.  Doc. 19.

[4]  "Direct evidence is 'evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption.'" Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997), *quoted in* Wilson, 376 F.3d at 1086.  "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination."  Wilson, 376 F.3d at 1086, *citing to* Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002)(other citations omitted).  If an alleged statement "suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." Wilson, 376 F.3d at 1086, *citing* Burrell, 125 F.3d at 1393.

Case No. 4:11cv153-RH/CAS

employees outside her class more favorably.  Wilson, 376 F.3d at 1087; Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff belongs to a protected class, and it may be assumed that she was qualified to do the job.  No argument has been made to the contrary.  It is also evident that when Plaintiff was given the choice of being terminated or voluntarily resigning from the Elections Office, she was subjected to an adverse employment action.  The only issue is whether the Defendant treated similarly situated employees[5] outside her class more favorably.

The evidence reveals that when the disagreement occurred between Plaintiff and Ms. Bell, both employees were sent home for the day.  Initially, both employees were treated the same.  Thereafter, Plaintiff's conduct escalated when she returned to the office, threw down her security badge, and took her belongings with her as she left. Plaintiff demonstrated both a desire to quit and issues with anger.  Plaintiff's conduct went well beyond that of the other employee.  Moreover, Plaintiff refused to discuss the issue with her supervisor at the workplace and was unable to seek resolution at the time.  Ms. Bell demonstrated a willingness to cooperate and restore peace in the office. During a telephone conversation with her supervisor later in the day, Plaintiff's attitude was challenging.  To the contrary, Ms. Bell showed remorse for the incident and

---

[5] "When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race . . . ."  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1273 (11th Cir. 2004), citing Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998).  It is unclear whether a temporary OPS employee is similarly situated to an employee with full-time employment status.  Nevertheless, this argument need not be addressed in light of Plaintiff's failure to come forward with evidence to support her claim.

Case No. 4:11cv153-RH/CAS

apologized.  Based on this evidence, the Defendant's decision to terminate only Plaintiff's employment may reasonably be concluded as due to Plaintiff's behavior and attitude and not based on race.  Plaintiff has failed to come forward with any evidence showing that this reason is a pretext for discrimination.  Therefore, summary judgment should be granted in Defendant's favor on Plaintiff's discrimination claim.

**b.     Retaliation**

To establish a prima facie case of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected expression; (2) she suffered a materially adverse action of a type that would dissuade a reasonable employee from engaging in statutorily protected activity, and (3) there was some causal relation between the two events. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2414-15, 165 L.Ed.2d 345 (2006) (announcing "materially adverse" element for Title VII claims); Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001); Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994).  To meet the causal requirement, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993).  At the outset, a plaintiff must establish "that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff." Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997), *citing* Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir. 1991).  Once the plaintiff establishes a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. Reichhold

Chem., 988 F.2d at 1571-72. If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. Holifield, 115 F.3d at 1566, *citing* Meeks, 15 F.3d at 1021; Goldsmith, 996 F.2d at 1163.

Here, it is clear that Plaintiff engaged in statutorily protected expression as she filed a charge of racial discrimination with FCHR against the Defendant within a month after her employment ended. That constitutes statutorily protected expression.

The second element requires Plaintiff to demonstrate that she suffered a "materially adverse" employment action from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge. Burlington, 548 U.S. at 67-70, 126 S.Ct. at 2415-16. "[T]rivial harms" and "petty slights" do not constitute adverse employment actions. *Id.* Defendant argues that Plaintiff did not suffer a "materially adverse" employment action in being listed as ineligible for rehire and in not disclosing more information as to the reason for the ineligibility. It is true that in a telephone conversation, Ms. Kelley stated that she could not "discuss it because it was a legal matter." An employer's desire not to discuss a pending legal issue is understandable and rational. Indeed, had the employer disclosed information about the case or its position in the matter, there would be additional claims being raised in this case. The disclosure of information advising that the legal issue was Plaintiff's filing a discrimination charge was due to Plaintiff's conduct, not the Defendant. The failure to discuss the basis for a decision to not rehire a former employee is not a materially adverse employment action.

Nevertheless, an "adverse employment action may be an ultimate employment decision, such as 'termination, failure to hire, or demotion.' " Crawford v. Carroll, 529 F.3d 961, 970-71 (11th Cir. 2008).  There is a reasonable basis to assume that an employer's decision to make a former employee ineligible for future rehire is an adverse employment action.  Such a decision is more than trivial and, if based on the fact that an employee engaged in statutorily protected activity such as filing a discrimination claim, would constitute a materially adverse action.  If employees believed that an employer would refuse to rehire them in the future, it is reasonable to concluded that a reasonable worker would be dissuaded from making a charge of discrimination.  See Burlington, 548 U.S. at 68, 126 S.Ct. at 2415.  For present purposes, it will be assumed that Plaintiff suffered a materially adverse employment action due to the Defendant's action in listing Plaintiff as ineligible for rehire.[6]

While giving Plaintiff the benefit of that assumption, her claim must fail on the third element.  Plaintiff has not come forward with any evidence to show a causal relationship between her being listed as ineligible for rehire and having filed a charge of discrimination.  Defendant points out that the decision to not re-hire Plaintiff was "determined on January 4, 2008, the date Plaintiff was terminated."  Doc. 19, at 8.  The personnel action form was completed on January 4, 2008.  Doc. 19, Ex. B (doc. 19-2, at 1).  That date was prior to Plaintiff's filing her charge of discrimination.  Plaintiff did not file the charge of racial discrimination with FCHR until February 1, 2008.  Doc. 19, Ex. C. Because the ineligibility decision was made before the discrimination charge, there

---

[6] To the degree Plaintiff *could* have argued that she suffered an adverse action in not being hired by CRMC, that employment decision was made by an employer not a party to this case.

Case No. 4:11cv153-RH/CAS

is no causal connection.  Summary judgment should be granted in favor of the Defendant on the retaliation claim as well.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 19, be **GRANTED** and judgment entered in favor of the Defendant on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on June 5, 2012.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**